No. 14-1806

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

BRYANA BIBLE,

Plaintiff-Appellant,

v.

UNITED STUDENT AID FUNDS, INC.,

Defendant-Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
The Honorable Tanya Walton Pratt
(Case No. 1:13-cv-575-TWP-TAB)

_____

**BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*
IN SUPPORT OF THE APPELLANT AND REVERSAL**

_____

BENJAMIN C. MIZER
*Principal Deputy Assistant
Attorney General*

MICHAEL S. RAAB
JEFFRICA JENKINS LEE
*(202) 514-5091
Attorneys, Appellate Staff
Civil Division, Room 7537
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C.  20530-0001*

# TABLE OF CONTENTS

STATEMENT OF INTEREST ............................................................................ 1

STATEMENT ................................................................................................. 2

    I.     Statutory and Regulatory Scheme ................................................ 2

         A.    Federal Family Education Loan Program ............................ 2

         B.    Collection Costs Under The Federal Family Education
              Loan Program ..................................................................... 5

    II.    Factual and Procedural Background ............................................. 9

SUMMARY OF ARGUMENT ......................................................................... 11

ARGUMENT ................................................................................................ 13

    I.     The Higher Education Act And The Secretary's
         Regulations Do Not Allow A Guaranty Agency To Assess
         Collection Costs Against A First-Time Defaulted Borrower
         Who Timely Enters Into A Rehabilitation Agreement And
         Fully Complies With That Agreement .......................................... 13

    II.    The Higher Education Act Does Not Preempt Private
         State-Law Breach-Of-Contract Claims That Are Premised
         On Violations Of  The Act .......................................................... 25

CONCLUSION ............................................................................................. 29

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**                                                                                               **Page**

*Auer v. Robbins*, 519 U.S. 452 (1997) ............................................................. 13

*Black v. Educ. Credit Mgmt. Corp.*,459 F.3d 796 (7th Cir. 2006) .................... 13

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).... 13

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) ................ 12, 28

**Statutes:**

Higher Education Act of 1965, Pub. L. No. 89-329,
  79 Stat. 1219 (1965) (codified as amended at 20 U.S.C. §§ 1001 *et seq.*)....... 1

20 U.S.C. § 1070(a) ............................................................................ 1
20 U.S.C. § 1070(b) ............................................................................ 1
20 U.S.C. § 1078(b)(1) ........................................................................ 3
20 U.S.C. § 1078(b)(1)(A) .................................................................... 3
20 U.S.C. § 1078(b)(1)(M) .................................................................... 8
20 U.S.C. § 1078(b)(7) ........................................................................ 3
20 U.S.C. § 1078(b)(9)) ........................................................................ 8
20 U.S.C. § 1078(c)(1)(A) .................................................................... 3
20 U.S.C. § 1078-6 ......................................................................... 8, 9, 24
20 U.S.C. § 1078-6(a) .................................................................. 4, 7, 9 22
20 U.S.C. § 1078-6(a) (1986) ............................................................... 6
20 U.S.C. § 1078-6(a)(1)(A) ................................................................. 8
20 U.S.C. § 1078-6(a)(1)(B) ................................................................. 4
20 U.S.C. § 1078-6(a)(1)(C) ................................................................. 8
20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa) ............................................... 6, 24
20 U.S.C. § 1078-6(a)(4) ..................................................................... 8
20 U.S.C. § 1078-10........................................................................... 8
20 U.S.C. § 1078-11........................................................................... 8
20 U.S.C. § 1078-12........................................................................... 8
20 U.S.C. § 1080a(c)(4)..................................................................... 16
20 U.S.C. § 1082(a)(1) .................................................................. 1, 5, 13
20 U.S.C. § 1082(a)(2) ...................................................................... 26
20 U.S.C. § 1082(m)(1)(D) ............................................................... 9, 27
20 U.S.C. § 1085(f).............................................................................. 3
20 U.S.C. § 1085(*l*)............................................................................. 3
20 U.S.C. § 1091a(b)(1) ...................................................5,11, 13, 21, 23, 24

Pub. L. No. 109-171, § 8014(h), 120 Stat. 171 (Feb. 8, 2006)........................ 24

Pub. L. No. 110-315, § 426, 122 Stat. 3235 (Aug. 14, 2008) ........................... 7

Pub. L. No. 111-39, § 402(d)(1), 123 Stat. 1941(July 1, 2009)........................ 7

Pub. L. No. 113-67, § 501(1), 127 Stat. 1186 (Dec. 2, 2013)........................... 6

Racketeer Influenced and Corrupt Organizations Act:

 18 U.S.C. §§ 1961 *et seq.* . ........................................................................ 11

26 U.S.C. § 6402(d), ..................................................................................... 17

31 U.S.C. § 3717(e)(1) .................................................................................. 19
31 U.S.C. § 3720A......................................................................................... 17

## Regulations:

4 C.F.R. §102.13(d) (1984).............................................................................. 20

31 C.F.R. §§ 901 *et seq.* ............................................................................... 20
31 C.F.R. § 901.9(c) ...................................................................................... 20

34 C.F.R. §§ 30.20-30.33 ............................................................................... 18
34 C.F.R. § 30.33 ...................................................................................... 16, 18
34 C.F.R. § 30.33(b)(3)(iii).............................................................................. 18
34 C.F.R. § 30.60 ..................................................................................... 5, 21
34 C.F.R. § 682.200(a)(3)(b)(1) ....................................................................... 3
34 C.F.R. § 682.405 ............................................................................... 7, 8, 22
34 C.F.R. § 682.405(a)(1)................................................................................. 4
34 C.F.R. § 682.405(a)(2)................................................................................. 4
34 C.F.R. § 682.405(a)(2)(i) ........................................................................... 20
34 C.F.R. § 682.405(a)(3)................................................................................. 4
34 C.F.R. § 682.405(a)(4)................................................................................. 4
34 C.F.R. § 682.405(b)(1) ............................................................................... 9
34 C.F.R. § 682.405(b)(1)(vi) ......................................................................... 21
34 C.F.R. § 682.405(b)(1)(iv) (1996) ............................................................. 20
34 C.F.R. § 682.405(b)(1)(vi)(B) ................................................................. 6, 7
34 C.F.R. § 682.405(b)(3)(i)(B) ....................................................................... 4
34 C.F.R. § 682.406(a) .................................................................................... 3
34 C.F.R. § 682.406(a)(1)................................................................................. 3
34 C.F.R. § 682.406(a)(5)................................................................................. 3
34 C.F.R. § 682.410 .................................................................................. 11, 13

34 C.F.R. § 682.410(b)(2) ...................................................................... passim
34 C.F.R. § 682.410(b)(2)(i)-(ii)....................................................................... 5
34 C.F.R. § 682.410(b)(5) .......................................................................... 16, 17
34 C.F.R. § 682.410(b)(5)(ii).......................................................3, 8, 14, 15, 25
34 C.F.R. §§ 682.410(b)(5)(ii)(A)-(D) .............................................................. 4
34 C.F.R. § 682.410(b)(5)(ii)(D) .............................................................. 8,15
34 C.F.R. § 682.410(b)(5)(iii) ......................................................................... 18
34 C.F.R. § 682.410(b)(5)(iv)(B) .................................................................. 4, 8
34 C.F.R. § 682.410(b)(5)(vi)(G) ................................................................. 8, 14
34 C.F.R. § 682.410(b)(6)(i) ............................................................................. 3
34 C.F.R. § 682.410(b)(6)(ii) ...................................................................... 3, 14
34 C.F.R. § 682.410(b)(8) ............................................................................... 27
34 C.F.R. § 682.411(a) .................................................................................... 3
34 C.F.R. § 682.411(b)(1) ................................................................................ 3
34 C.F.R. § 682.411(o) ................................................................................... 27

51 Fed. Reg. 24092, 24095 (July 1, 1986) .................................................. 17
51 Fed. Reg. 24096 (July 1, 1986).............................................................. 18
55 Fed. Reg. 40120 (Oct. 1, 1990) .............................................................. 27
57 Fed. Reg. 60280, 60355-56 (Dec. 18, 1992) ..................................... 17, 19
57 Fed. Reg. 60311-12 (Dec. 18, 1992)................................................. 16, 19
57 Fed. Reg. 60356 (Dec. 18, 1992)............................................................ 18
59 Fed. Reg. 33334 (June 28, 1994)............................................................ 22
65 Fed. Reg. 70390 (Nov. 22, 2000) ........................................................... 20
71 Fed. Reg. 45666 (Aug. 9, 2006)................................................................ 7
73 Fed. Reg. 63232 (Oct. 23, 2008) .............................................................. 7
74 Fed. Reg. 55972 (Oct. 29, 2009) .............................................................. 7
78 Fed. Reg. 65768 (Nov. 1. 2013)................................................................ 7

**Legislative Materials:**

H.R. Rep. No. 109-276, 109th Cong. at 240 (Nov. 7, 2005) ........................... 24

**Miscellaneous:**

Dear Guaranty Agency Director Letter (March 29, 1994)............................... 22

Letter from Ronald E. Streets, Program Specialist, Policy Dev. Div.,
    Student Financial Assistance Programs, U.S. Dep't of Educ.
    to Phillip Cervin, Ass't Vice President, Collections, Texas
    Guaranteed Student Loan Corp. (July 28, 1997)......................................... 15

iv

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

**No. 14-1806**

_____

BRYANA BIBLE,

Plaintiff-Appellant,

v.

UNITED STATES STUDENT AID FUNDS, INC.,

Defendant-Appellee.

_____

**BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*
IN SUPPORT OF THE APPELLANT AND REVERSAL**

_____

**STATEMENT OF INTEREST**

The Higher Education Act of 1965, Pub. L. No. 89-329, 79 Stat. 1219 (1965) (codified as amended at 20 U.S.C. §§ 1001 *et seq.*) was enacted to "assist in making available the benefits of postsecondary education to eligible students" by establishing a set of federal student loan and grant programs. 20 U.S.C. § 1070(a). Congress delegated authority to the Secretary of Education (Secretary or Department) "to carry out programs to achieve the purposes of" the Act, *id.* § 1070(b), and, as pertinent here, to "prescribe such regulations as may be necessary to carry out the purposes [of the Federal Family Education Loan Program]." *Id.* § 1082(a)(1). The United States therefore has a significant interest in the proper construction of the Higher Education Act and the Secretary's implementing regulations.

The Court invited the Secretary to submit an *amicus curiae* brief in this matter to address "whether and under what circumstances the Higher Education Act, as amended, and its regulations allow a guaranty agency participating in the Federal Family Education Loan Program to assess collection costs against a first-time defaulted borrower who (1) timely enters into a rehabilitation agreement with the guarantor upon receiving notice that the guarantor has paid a default claim and (2) complies with that agreement." As explained below, the district court erred in holding that a guaranty agency is permitted to assess collection costs in the circumstances presented here. The court also erred in concluding that the Higher Education Act preempts state-law breach-of-contract claims that are premised on violations of the Act.

**STATEMENT**

I. Statutory and Regulatory Scheme.[1]

    A. *Federal Family Education Loan Program.*

Title IV of the Higher Education Act establishes the Federal Family Education Loan Program, which encourages lenders to make funds available to students who might not otherwise be able to finance postsecondary education. Under the program, lenders receive a guarantee from a state or private non-profit guaranty agency that the loans will be repaid if borrowers default. 20

_____

[1]The Court requested that we address the statutes and regulations in effect during the period June 12, 2006 through July 29, 2013. Except where otherwise indicated, citations are to the versions of the Higher Education Act and its implementing regulations in effect during that period.

U.S.C. § 1078(b). That guarantee is reinsured by the Department, which serves as the ultimate guarantor on each loan. *Id.* § 1078(b)(1), (c)(1)(A).   In   general, a student loan borrower must begin making monthly installment payments on her student loan within a specified period after graduating from an institution of higher learning. 20 U.S.C. § 1078(b)(7). If the borrower fails to make a required payment, the loan is deemed "delinquent." 34 C.F.R. § 682.411(b)(1). Once the loan is delinquent, the lender must take certain measures – known as "due diligence" – to demand that the borrower repay the loan. 20 U.S.C. § 1085(f); 34 C.F.R. § 682.411(a).

If the borrower remains delinquent for 270 days, the loan is considered to be in "default."  20 U.S.C. § 1085(*l*); 34 C.F.R. § 682.200(a)(3)(b)(1). After that 270th day of delinquency, the lender may file a default claim with the guaranty agency, which may, where the lender has exercised the required "due diligence," pay the claim and acquire the loan from the lender. 34 C.F.R. § 682.406(a)(1), (5). The guarantor is then entitled to receive reimbursement from the government for paying the lender's default claim. 20 U.S.C. § 1078(c)(1)(A); 34 C.F.R. § 682.406(a).

The guarantor is required to "engage in reasonable and documented collection activities" on a loan for which it has paid a default claim.  34 C.F.R. § 682.410(b)(6)(i). Within forty-five days after paying a lender's default claim, *id.* § 682.410(b)(6)(ii), "but before it reports the default to a consumer reporting agency or assesses collection costs against a borrower," § 682.410(b)(5)(ii), the

guarantor must, *inter alia*, provide the borrower with written notice that it has paid the default claim and inform the borrower of her rights to: request access to the guarantor's records; seek administrative review of the legal enforceability or past-due status of the loan; and an "opportunity enter into a repayment agreement on terms satisfactory to the agency." *Id.* §§ 682.410(b)(5)(ii)(A)-(D); 682.410(b)(5)(iv)(B); 682.410(b)(5)(vi). The guarantor must allow the borrower at least sixty days to exercise these options. *Id.* § 682.410(b)(5)(iv(B).

A rehabilitation agreement is a specific type of satisfactory repayment agreement. When a borrower has defaulted on a loan, the Higher Education Act requires a guarantor to offer the borrower an opportunity to have the defaulted loan "rehabilitated." 20 U.S.C. § 1078-6(a); 34 C.F.R. § 682.405(a)(1). Through rehabilitation, the loan's default status may be cured if the borrower voluntarily makes nine installment payments "under a monthly repayment agreement" over a ten-month period, after which the guarantor may sell the loan to a Federal Family Education Loan Program lender or assign it to the Department. 20 U.S.C. § 1078-6(a); 34 C.F.R. § 682.405(a)(2(i). Neither the guaranty agency nor the Department may "demand from a borrower as monthly payment amounts . . . more than is reasonable and affordable based upon the borrower's total financial circumstances." 20 U.S.C. § 1078-6(a)(1)(B). After a loan has been rehabilitated, the borrower regains all of the benefits of the student loan program, 34 C.F.R. § 682.405(a)(3), and the guarantor must

request the removal of the record of default from the borrower's credit history. *Id.* § 682.405(b)(3)(i)(B).

    B. *Collection Costs Under The Federal Family Education Loan Program.*

    1.  At all times pertinent here, 20 U.S.C. § 1091a(b)(1) has required a borrower who has defaulted on a loan to pay "reasonable collection costs." The Higher Education Act does not define the term "reasonable collection costs," but the Department, acting pursuant to Congress's express delegation of rulemaking authority (20 U.S.C. § 1082(a)(1)) has clarified which collection costs are "reasonable collection costs." The Department's regulations generally provide that when a guarantor has paid a default claim, it is required to charge the borrower "an amount equal to the reasonable costs incurred by the agency in collecting [the] loan." 34 C.F.R. § 682.410(b)(2).[2] These costs must equal the lesser of the amount the borrower would be charged as calculated under 34 C.F.R. § 30.60,[3] or the amount the Department would assess the same borrower if the Department held the loan. *Id.* § 682.410(b)(2)(i)-(ii).

    With respect to borrowers who enter into loan rehabilitation agreements under the Higher Education Act's default reduction program, the Act provides

---

    [2]Such costs "may include, but are not limited to, all attorney's fees, collection agency charges, and court costs." 34 C.F.R. § 682.410(b)(2).

    [3]34 C.F.R. § 30.60 provides a non-exhaustive list of the costs the Department may impose on delinquent debtors and sets forth the procedures for calculating such costs if the Department uses a collection agency to collect a debt on a contingent fee basis.

that when a guaranty agency has secured all of the nine required payments and sells the loan to a lender, the guarantor "may, in order to defray collection costs . . . charge to the borrower an amount not to exceed 18.5 percent of the outstanding principal and interest at the time of the loan sale." 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa).[4] The Department's regulations in turn provide that the written rehabilitation agreement must inform the borrower of the amount of any collection costs that may be added to the unpaid loan principal at the time the loan is sold to an eligible lender, which "may not exceed 18.5 percent of the unpaid principal and accrued interest on the loan at the time of the sale." 34 C.F.R. § 682.405(b)(1)(vi).

As originally enacted, 20 U.S.C. § 1078-6(a) (1986) contained no provision addressing whether and in what amount a guarantor could charge a defaulted borrower collection costs. *See* Pub. L. No. 99-498, § 402(a), 100 Stat. 1394 (Oct. 17, 1986). Section 1078-6(a) was amended three times during the relevant time frame of the dispute in this case (June 12, 2006 to July 29, 2013); however, those amendments do not change the substance of the statute as it relates to the issue in dispute. For instance:

- Effective July 1, 2006, the section was amended to reduce from twelve to nine the number of consecutive payments payments needed to qualify a loan for rehabilitation and to permit the guarantor to charge the borrower collection

---

[4]Effective July 1, 2014, the statute was amended to lower the  percentage from 18.5 percent to 16 percent. Pub. L. No. 113-67, § 501(1), 127 Stat. 1187 (Dec. 2, 2013).

costs not to exceed 18.5 percent of the outstanding principal and interest at the time of sale of the rehabilitated loan. Pub. L. No. 109-171, § 8014(h), 120 Stat. 171 (Feb. 8, 2006).

- In 2008, provisions were added establishing credit bureau reporting requirements regarding rehabilitated loans and limiting the number of times a borrower could rehabilitate a loan. Pub. L. No. 110-315, § 426, 122 Stat. 3235 (Aug. 14, 2008).

- In 2009, provisions were added that permit a guarantor that is unable due to adverse market conditions to sell the loan, to assign the loan to the Department, and providing that the Department, upon assignment, was to reimburse the guarantor in the amount of those collection costs charged at the time of assignment, not to exceed 18.5 percent of the outstanding balance, and to direct the guarantor to deposit that payment into the guarantor's operating fund. Pub. L. No. 111-39, § 402(d)(1), 123 Stat. 1941 (July 1, 2009).

The Department's regulations implementing § 1078-6(a), published at 34 C.F.R. § 682.405, were also amended several times during the relevant time period to conform to the statutory changes. *See* 71 Fed. Reg. 45666, 45677 (Aug. 9, 2006); 73 Fed. Reg. 63232, 63254 (Oct. 23, 2008); 74 Fed. Reg. 55972, 55973 (Oct. 29, 2009).[5]

---

[5]34 C.F.R. § 682.405 was again amended on November 1, 2013. Among numerous other changes, the regulation was revised to require that the rehabilitation agreement disclose the amount of "any" collection costs to be added to the unpaid principal of the loan when the loan is sold to an eligible lender, rather than "the collection costs to be added." 34 C.F.R. § 682.405(b)(1)(vi)(B); *see* 78 Fed. Reg. 65768, 65815, 65816 (Nov. 1. 2013).

2. The Department interprets its regulations to provide an exception with regard to collection costs charged when a borrower promptly enters into a loan repayment agreement after the borrower has been notified by the guarantor that it has paid a default claim. After a guaranty agency notifies a borrower that it has paid a default claim on a loan, "but before it . . . assesses collection costs against [the] borrower," § 682.410(b)(5)(ii), it must, among other things, "allow the borrower at least 60 days from the date the notice . . . is sent to request [administrative] review," § 682.410(b)(5)(iv)(B), and "provide the borrower with . . . [a]n opportunity to enter into a repayment agreement satisfactory to the agency." *Id.* §682.410(b)(5)(ii)(D); *see also id.* § 682.410(b)(5)(vi)(G). The terms of repayment agreements are generally within the discretion of the guarantor.

However, 20 U.S.C. § 1078-6 and 34 C.F.R. § 682.405 require the guarantor to accept, and enter into, a particular kind of repayment agreement – a rehabilitation agreement that can qualify the borrower to have the default status of the loan cured and the loan sold to a lender (or assigned to the Secretary) and thereby regain all benefits previously available on the loan.[6] *See* 20 U.S.C. § 1078-6(a)(1)(A), (C), (4); 34 C.F.R. § 682.405(a)(1), (3). The repayment arrangements available to a borrower therefore necessarily include a

---

[6]Such benefits include choice of repayment plans, deferment eligibility, and loan forgiveness for qualifying service. 20 U.S.C. §§ 1078(b)(1)(M), (b)(9); 1078-10; 1078-11; 1078-12.

rehabilitation agreement. Indeed, subsection (a) of the statutory authorization for rehabilitation, 20 U.S.C. §1078-6, is entitled "[o]ther repayment incentives." 20 U.S.C. § 1078-6(a). Further, subsection (a)(4) refers to the borrower "mak[ing] scheduled repayments" on a loan going through rehabilitation. *Id.* §1078-6(a)(4). Moreover, the Department's regulations governing rehabilitation refer to the rehabilitation agreement as a monthly "repayment agreement." 34 C.F.R. § 682.405(b)(1) (A "borrower must voluntarily make at least nine of the ten payments required under a monthly *repayment agreement.*") (emphasis added). Thus, if a defaulted borrower enters into a repayment agreement with a guaranty agency within the sixty-day period after the guarantor gives the borrower notice that it has paid a default claim, and complies with that agreement, the guarantor is not required or permitted to charge collection costs to the borrower.

II. Factual and Procedural Background**.**

 On June 12, 2006, plaintiff Bryana Bible signed a Federal Stafford Loan Master Promissory Note that contains the terms of the loan, which incorporate provisions of the Higher Education Act and its implementing regulations.[7] Citibank was the private lender, and defendant United Student Aid Funds, Inc.

---

[7]The promissory note is a form that is required by the Higher Education Act to be used for loans made under the Federal Family Education Loan Program. 20 U.S.C. § 1082(m)(1)(D).

(USA Funds) guaranteed the loan. S.A. 2;[8] App. 121. The loan agreement specified that, in the event of default, Bible would be obligated to pay "reasonable collection costs." App. 121, 122.

In 2012, Bible defaulted on the loan, Citibank made a claim on the guarantee, and USA Funds paid the default claim and took assignment of the loan. S.A. 2. On April 12, 2012, defendant notified Bible that it had paid the default claim (App. 131), and offered her several "options for resolving [her] loan debt," including an opportunity to enter into a loan rehabilitation agreement. App. 133. The notice advised Bible that the loan rehabilitation requirements included "making at least nine, on-time, monthly payments during a 10-month period," and that "[a]s part of [her] eligibility for loan rehabilitation," she would be "assessed collection costs at a reduced rate of 18.5% of the outstanding balance" of the loan. *Id.* On April 27, 2012, defendant sent Bible the forms necessary for her to complete an application to rehabilitate her loan. *Id.* at 136-40. Bible promptly entered into a rehabilitation agreement on April 30, 2012, and alleges (and defendant does not dispute) that she complied with the repayment terms of the agreement. *Id.* at 9. Defendant subsequently assessed collection costs against Bible in the amount of $4,547.44. *Id.* at 142.

---

[8] "S.A." refers to Appellant's Short Appendix.

Bible filed suit against USA Funds in the Southern District of Indiana, alleging state-law breach-of-contract claims and federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961 *et seq.*) claims. Bible's complaint alleged that her loan agreement incorporates the requirements of the Higher Education Act, which does not permit collection costs if a borrower promptly enters into and satisfies a rehabilitation agreement. App. 1-2. The district court disagreed and dismissed the lawsuit for failure to state a claim. S.A. 1-18. The court found Bible's claims to be "essentially disguised as claims for violations of the Higher Education Act" and therefore preempted by the Act. *Id.* at 8, 9. The court also held that Bible's claims failed on the merits, opining that the Higher Education Act not only permits, but "explicitly require[s]" imposition of collection costs, even if the borrower enters into a rehabilitation agreement. *Id.* at 16. In so ruling, the court declined to defer to arguments made in a brief filed by the Secretary of Education as intervenor in *Educ. Credit Mgmt. Corp. v. Barnes*, 318 B.R. 482 (S.D. Ind. 2004), stating that "a legal brief is not binding or persuasive authority." S.A. 17.

## SUMMARY OF ARGUMENT

The Higher Education Act provides that student loan defaulters must pay the "reasonable collection costs" incurred to collect the loan. 20 U.S.C. §1091a(b)(1). Acting pursuant to its delegated rulemaking authority, the Department of Education has promulgated regulations establishing which costs are "reasonable collection costs." 34 C.F.R. § 682.410. The regulations

11

require a guaranty agency, after it pays a default claim and takes an assignment of a loan, to send an initial notice to the defaulting borrower. In that notice, the guarantor must give the borrower at least sixty days to exercise any of several options to resolve her loan debt, including entering into a repayment agreement with the guarantor. The Department interprets these regulations to provide an exception to the requirement to charge collection costs when a borrower promptly enters into a loan repayment agreement (including a rehabilitation agreement) within this sixty-day period after the borrower has been notified by the guarantor that it has paid a default claim. Thus, the Department interprets the Higher Education Act's provision that collection costs must be "reasonable" to mean that guarantors may not assess such costs on a borrower who promptly enters into a rehabilitation agreement and follows through with that agreement. That interpretation is a permissible construction of the statute and the Department's implementing regulations. The district court therefore erred in holding that collection costs must be imposed under the circumstances presented here.

The district court also erred in concluding that the Higher Education Act preempts state-law breach-of-contract claims that are premised on violations of the Act. As this Court explained in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012), "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." Bible's

breach-of-contract claim can succeed only if she is correct that USA Funds violated the Higher Education Act. There is no basis for concluding that her claim conflicts with the federal statute.

## ARGUMENT

I.    The Higher Education Act And The Secretary's Regulations Do
      Not Allow A Guaranty Agency To Assess Collection Costs Against
      A First-Time Defaulted Borrower Who Timely Enters Into A
      Rehabilitation Agreement And Fully Complies With That Agreement.

The Higher Education Act does not define "reasonable collection costs." Congress "explicitly left a gap for the agency to fill," *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), by delegating to the Secretary authority to elucidate 20 U.S.C. § 1091a(b)(1) by "prescrib[ing] such regulations as may be necessary to carry out the [Act's] purposes." *Id.* § 1082(a)(1). The Secretary exercised that delegated authority by issuing 34 C.F.R. § 682.410, "which establishes the basic rules for the assessment of collection costs against borrowers who have defaulted on their student loans," and which costs are "reasonable collection costs." *See Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 800 (7th Cir. 2006). The Department's reasonable interpretation of the Act is entitled to substantial deference. *See Chevron*, 467 U.S. at 843-44. And the agency's interpretation of its regulations is "controlling" unless plainly erroneous or inconsistent with the regulations. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

1.    The Department interprets the requirement in 34 C.F.R. § 682.410(b)(2) that a guaranty agency assess collection costs to be subject to

the conditions in paragraph (b)(5), which require a guaranty agency to perform certain tasks "after it pays a default claim on a loan but before it reports the default to a consumer reporting agency or assesses collection costs against a borrower." 34 C.F.R. §682.410(b)(5)(ii). Most notably here, the guarantor must provide the borrower written notice explaining the nature of the debt, and the options to obtain an independent administrative review and "to reach an agreement on repayment terms satisfactory to the agency to prevent the agency from reporting the loan as defaulted to consumer reporting agencies." *Id.* §682.410(b)(5)(vi)(G). If the borrower does not promptly make "repayment arrangements," the regulations require the guaranty agency to then "initiate procedures to collect the debt," which may include offset of federal income tax refunds, administrative wage garnishment, and litigation. 34 C.F.R. §682.410(b)(6)(ii). Such protracted collection efforts are much more costly for the guarantor than simply arranging repayment terms when the borrower promptly responds to the initial notice. Thus, the Department has consistently taken the position that costs may only be assessed on a borrower if she does not enter into a repayment agreement – of which a rehabilitation agreement is simply one form – in a timely manner and comply fully with the agreement, because failure to timely agree to voluntarily repay requires the guarantor to incur these collection costs.

Indeed, that is the reason for requiring notice of the repayment opportunity "before" the guarantor "assesses collection costs against a

14

borrower." *Id.* § 682.410(b)(5)(ii).  As the Department explained its position in a 1997 letter to a guaranty agency, § 682.410(b)(5)(ii)(D) "provides the borrower an opportunity to enter into a satisfactory repayment agreement before the agency either reports the default to a credit bureau or assesses collection costs against a borrower as required in §682.410(b)(2)." Letter from Ronald E. Streets, Program Specialist, Policy Dev. Div., Student Financial Assistance Programs, U.S. Dep't of Educ., to Phillip Cervin, Ass't Vice President, Collections, Texas Guaranteed Student Loan Corp. (July 28, 1997) ("Streets Letter.").[9] The agency explained that the regulation's reference to repayment terms that are "'satisfactory to the agency…' does not require that the loan be paid in full." *Id.* To the contrary, the regulation "provides the agency with discretion in establishing a satisfactory repayment agreement with the borrower." *Id.*  "If the agency obtains a signed repayment agreement from the borrower within the 60-day period [following notice that a default claim has been paid], and the borrower begins to make payments, the agency is not required to assess the borrower collection costs. Collection costs related to the default would be assessed only if the borrower failed to continue to make payments required by the repayment agreement." *Id.*

The Department later reiterated and elaborated upon those views in defending a challenge to the validity of the collection costs regulations.  The

---

[9]A copy of the Streets Letter is included in the attached addendum.

government explained that "[t]he regulations [34 C.F.R. § 682.410(b)(5)] therefore direct guarantors to charge collection costs *only* to those debtors who cause the guarantor to incur collection costs by failing to agree promptly to repay voluntarily. The Department follows the same procedure when it takes assignment of defaulted loans from guarantors."  Brief of Secretary of Educ. at 22 (filed Mar. 14, 2002), *Educ. Credit Mgmt. Corp. v. Barnes*, 318 B.R. 482 (S.D. Ind. 2004) (App. 55) [hereinafter "Sec'y's *Barnes* Br."]  Thus, the regulations "ensure that charges are imposed only on those debtors who fail to cooperate and thereby cause the guarantor to incur collections costs." *Id.* at 23 (App. 56).[10]  Such costs are "reasonable collection costs" for which the defaulted borrower bears responsibility.

2.  The context in which the Department adopted regulations requiring guarantors to provide the borrower with notice and an opportunity to resolve the defaulted loan clarifies the intent behind the rules. The Higher Education Act requires guarantors and the Department, prior to reporting a loan as in default to consumer reporting agencies, to provide the borrower with notice that the loan will be reported as in default status "unless the borrower enters

---

[10]The dispute in *Barnes* arose in bankruptcy court. Barnes defaulted on his student loan debt and filed for bankruptcy. The guarantor filed a claim for the student loan debt in bankruptcy court that included a claim for collection costs. The bankruptcy trustee challenged the constitutionality of 34 C.F.R. § 682.410(b)(2), and the district court subsequently withdrew the reference of the case to bankruptcy court. The Secretary intervened in the district court to defend the validity of the regulation.

into repayment," but requires the default to be reported "if the borrower has not entered into repayment within a reasonable time." 20 U.S.C. § 1080a(c)(4). The Department adopted 34 C.F.R. § 682.410(b)(5) in 1992 to implement this requirement, providing that "before [the guarantor] reports the default to a credit bureau or assesses collection costs against a borrower" it must provide the borrower an opportunity to challenge the enforceability or past-due status of the loan and obtain an independent review of that challenge, access to the guarantor's records, and an opportunity to agree to voluntary repayment. *See* 57 Fed. Reg. 60280, 60355-56 (Dec. 18, 1992).

In publishing the final 1992 rule, the Department explained that "a guaranty agency should not have difficulty implementing this [notice and opportunity to resolve] requirement as it already provides an opportunity for review when it assigns a loan to the Secretary for participation in the Internal Revenue Service (IRS) offset process. The statute authorizing Federal agencies to collect debts by administrative offset also requires the agency to provide a debtor with notice of a proposed offset and at least 60 days in which to present evidence regarding the debt." 57 Fed. Reg. at 60312. The Department had been authorized since 1984 to refer defaulted student loan debts to the Internal Revenue Service for collection by offset against tax overpayments owed to defaulted borrowers, 26 U.S.C. § 6402(d), 31 U.S.C. § 3720A, and in 1986 the Department adopted regulations to establish the procedures it would follow prior to making a referral for offset. *See* 51 Fed. Reg. 24095, 24099 (July 1,

17

1986); 34 C.F.R. § 30.33. These procedures included giving the defaulting borrower notice of the proposed offset and an opportunity to avoid offset by entering into a satisfactory repayment agreement for the debt. 34 C.F.R. § 30.33(b)(3)(iii).

When the Department adopted the offset rule, the Secretary made it clear that in order to collect by federal offset those defaulted, federally-reinsured loans held by guaranty agencies, the Department would use the guaranty agencies to send (on its behalf) the required pre-offset notices to borrowers, and to conduct the initial review if requested by the borrower, including providing the required opportunity for the borrower to avoid offset by making a timely agreement to repay the loan. *See* 51 Fed. Reg. at 24096 ("[T]he Secretary may provide an initial administrative review to a debtor by means of a review and initial determination by the guarantee agency that originally held the debtor's loan and now maintains records of that loan account. In such instances, the agency conducts the review in accordance with the procedures established in § 30.33, and uses the same criteria as Department officials.").

The 1992 rule expressly provided that the guaranty agency would meet the new Federal Family Education Loan Program requirement by following the pre-offset rules. *See* 57 Fed. Reg. at 60356; 34 C.F.R. § 682.410(b)(5)(iii) ("The procedures set forth in 34 CFR 30.20-30.33 (administrative offset) satisfy the requirements of paragraph (b)(5)(ii) of this section"). Thus, by referencing the well-established and familiar refund offset procedure as a model for the new

"notice and opportunity to resolve" rule for guaranty agencies, the Department intended the new rule to operate in the same manner as the refund offset rules – a borrower who entered into a satisfactory repayment agreement within the sixty-day period following the notice would avoid each of the adverse consequences threatened in the required notice – *i.e.*, the reporting of the loan as in default, the imposition of collection costs, and other enforcement actions, such as refund offset.

3. An understanding of the underlying basis for charging collection costs to defaulted student loan borrowers further supports the Department's interpretation of the Higher Education Act and its implementing regulations. Because the Department reinsures guarantors for their losses in paying default, guarantor claims against defaulted borrowers are federal claims. *See* 31 U.S.C. § 3720A(a) ("legally enforceable debt" includes "debt administered by a third party acting as an agent for the Federal Government").[11] Federal agencies must assess a person who owes a debt "a charge to cover the cost of processing and handling a delinquent claim." *Id.* § 3717(e)(1).

The 1992 final rule that required guarantors to provide "notice and opportunity to resolve" also required the guarantor, for the first time, to charge collection costs. 34 CFR § 682.410(b)(2); *see* 57 Fed. Reg. at 60311-12, 60355.

---

[11]A guaranty agency pays a default claim using funds from its "Federal Student Loan Reserve Fund" – the fund established pursuant to 20 U.S.C. §1072a, which is "considered to be property of the United States." *Id.* § 1072a(e).

At the time the Department's collection-costs rule was issued in 1992, the Federal Claims Collection Standards, issued jointly by the former General Accounting Office and the Department of Justice, required federal agencies to calculate collection costs either as actually incurred on an individual loan or based "upon cost analyses establishing an average of actual additional costs incurred by the agency in processing and handling claims against other debtors *in similar stages of delinquency*." 4 C.F.R. §102.13(d) (1984); *see also* 49 Fed. Reg. 8889 (March 9, 1984) (emphasis added).[12] The Department applied this directive by adopting 34 C.F.R. § 682.410(b)(2) and (5), which distinguish between defaulted borrowers who promptly agree to repay – within the sixty-day period immediately following the initial notice of the opportunity to dispute the debt and agree to repay – from those defaulters who do not immediately cooperate and for whom the guarantor would incur significant costs to pursue. *See also* Sec'y's *Barnes* Br. 23-24 (App. 56-57) ("All debtors who are charged collection costs pursuant to 34 C.F.R. § 682.410(b)(2) are in similar stages of delinquency. . . . [T]he rule requires guarantors to charge

---

[12]The Federal Claims Collection Standards were recodified as amended at 31 C.F.R. §§ 901 *et seq.* in 2000. 65 Fed. Reg. 70390, 70405 (Nov. 22, 2000). The Federal Claims Collection Standards currently give agencies discretion in calculating administrative costs. *See* 31 C.F.R. § 901.9(c) ("The calculation of administrative costs should be based on actual costs incurred or *upon estimated costs as determined by the assessing agency*.") (emphasis added); 65 Fed. Reg. at 70394 ("Federal agencies should promulgate debt collection regulations tailored to specific agency program requirements."). In the exercise of its discretion, the Department has determined that similar collection costs should be charged against borrowers who are in similar stages of delinquency.

collection costs to those defaulters who have already defaulted, whose loan has been assigned to the guarantor based on that default, and *who fail to make satisfactory arrangements to repay within an initial grace period after an initial demand by the guarantor.*") (emphasis added). The Department's collection costs rules, which apply to its own collection efforts, are codified at 34 C.F.R. § 30.60.

Thus, in the Department's view, charging collection costs to a borrower like Bible, who promptly enters into and complies with a rehabilitation agreement, would be inconsistent with the Higher Education Act's requirement that collection costs must be "reasonable." 20 U.S.C. § 1091a(b)(1). The Department interprets "reasonable" to mean that similar costs must be assessed to borrowers who are at similar stages of delinquency, and a borrower who promptly enters into a rehabilitation agreement is not similarly situated to one who does not.

4. Defendant USA Funds maintains, however, that a "rehabilitation agreement" is distinct from a "repayment agreement," and points out that the Higher Education Act and the Department's regulations clearly contemplate that collection costs may be assessed against a defaulted borrower who completes a rehabilitation agreement. *See* Appellee's Br. 9-12. But, as previously discussed, because rehabilitation consists of the borrower requesting rehabilitation and voluntarily making a series of installment payments pursuant to a "monthly repayment agreement" in the amount

21

determined by the guarantor, a rehabilitation agreement is simply a specific form of a satisfactory repayment agreement. *See* 34 C.F.R. § 682.405(a)(2)(i) (A loan is considered to be "rehabilitated" after the borrower has voluntarily "made . . . nine of the ten payments required under a monthly *repayment agreement.*") (emphasis added).

The Department adopted 34 C.F.R. § 682.405 to implement the loan rehabilitation provisions of the Higher Education Act, 20 U.S.C. § 1078-6(a), in 1994. 59 Fed. Reg. 33334, 33355 (June 28, 1994). The 1994 regulations required that the guarantor explain to the borrower the terms of the rehabilitation agreement, including, as pertinent here, "the amount of the collection costs to be added to the unpaid principal at the time of the sale. . . . [which] may not exceed 18.5 percent of the unpaid principal and accrued interest at the time of the sale." 34 C.F.R. § 682.405(b)(1)(iv) (1996). As explained in a 1994 "Dear Guaranty Agency Director" letter issued before the regulations were adopted, the Department had previously "provided policy guidance that authorized guaranty agencies to include all outstanding collection costs on the defaulted loan in the rehabilitated loan amount to be purchased." Dear Guaranty Agency Director Ltr. at 2 (March 29, 1994).[13] The proceeds of the sale of a loan to the new lender were treated as a recovery on the loan, and collection costs were included in the sale price and became part

---

[13]A copy of this letter is included in the attached addendum.

of the borrower's new outstanding balance. After several program participants expressed concern that "including a large amount of collection costs in the borrower's new loan debt would be a disincentive to a borrower attempting to resolve the default status on a loan through rehabilitation," the Department reconsidered its guidance. *Id.* The Department explained that it had "decided that[] strict application of the requirements [20 U.S.C. § 1091a(b)(1)] would frustrate the intent of" the changes to the rehabilitation program. *Id.* The Department "concluded that the amount of collection costs currently assessed borrowers as reasonable under 34 CFR 682.410(b)(2) is not reasonable when the borrower has shown the initiative to address the default through [rehabilitation]." *Id.* Accordingly, collection costs would be capped at 18.5 percent of the outstanding principal and accrued interest "at the time the agency arranges the lender purchase to rehabilitate the loan." *Id.*

Nothing in the text or explanation of the 1994 regulations for the loan rehabilitation program suggested or implied that loan rehabilitation agreements were exempt from the general rules adopted in 1992 that allow the guarantor to charge collection costs only to borrowers who fail to enter into repayment agreements within the sixty-day period following the initial notice. The loan rehabilitation agreement with the borrower is clearly a "repayment agreement" – the borrower may request rehabilitation of her defaulted loan and the guarantor then must determine the loan repayment installment amounts; the

borrower may contest those terms, but must agree to and actually make the payments in order to have the loan rehabilitated. 34 C.F.R § 682.405(b)(1)(vi).

As noted previously, the Higher Education Act did not address the charging of collection costs upon completion of the loan rehabilitation by the sale or assignment of the loan until 20 U.S.C. § 1078-6 was amended in 2006. At that time, the statute was amended to provide that the guarantor "may in order to defray collection costs, charge the borrower an amount not to exceed 18.5 percent of the outstanding principal and interest at the time of the loan sale, and retain such amount from the proceeds of the loan sale." Pub. L. No. 109-171, § 8014(h), 120 Stat. 171 (Feb. 8, 2006) (codified as amended at 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa)).

The legislative history indicates only that the amendment was "to codify the collection costs permissible for rehabilitated loans at up to 18.5 percent of the outstanding principal and interest of the loan." H.R. Rep. No. 109-276, 109th Cong. at 240 (Nov. 7, 2005). The costs that were permissible had already been established under Department regulations. Because the amendment simply "codified" the permissible costs, the amendment did not empower the guarantor to charge costs that were not already permitted under the regulations. Rather, the amendment should be read in in harmony with the Higher Education Act's pre-existing requirement that collection costs must be "reasonable," 20 U.S.C. § 1091a(b)(1), which the Department, in the exercise of its regulatory authority, has interpreted to exclude the assessment of collection

24

costs on a borrower who promptly enters into a rehabilitation agreement, 34 C.F.R. § 682.410(b)(5)(ii).

In sum, the Department's regulations require a guaranty agency to charge defaulted borrowers collections costs.  But before doing so, the guaranty agency must provide the borrower a sixty-day window of opportunity to dispute the debt, obtain a review of  any objection, and agree to repay the debt on terms satisfactory to the guarantor. If the borrower agrees within that initial sixty-day period to repay the loan under terms satisfactory to the guarantor, the borrower cannot be charged collection costs unless the borrower later fails to honor the agreement. The Department's interpretation of the Higher Education Act and its implementing regulations is reasonable and warrants deference.

II.     The Higher Education Act Does Not Preempt Private State-Law
        Breach-Of-Contract Claims That Are Premised On Violations Of
        The Act.

The Court also invited the government to brief any of the other issues presented in this case, and we take that opportunity to make clear that the Higher Education Act does not preempt breach-of-contract claims that are premised on violations of the Act.  Bible's state-law breach-of-contract claim is based on her allegations that the guaranty agency's imposition of collection costs were not authorized by the Higher Education Act, that the terms of the promissory note incorporated relevant provisions of the Act and its regulations, and that, therefore, she may enforce her rights under the note through a

breach-of-contract action. In response, the guarantor argued that the Higher Education Act provides no private right of action against guaranty agencies, and that only the Department has authority to entertain and remedy any violations of the Act or regulations. *See* 20 U.S.C. § 1082(a)(2).

The district court agreed with the guarantor, reasoning that "[i]n order to decide the merits of Ms. Bible's claims, the Court would necessarily have to interpret and apply the [Higher Education Act], not merely the language of [the promissory note]." S.A. 10. Because the Act does not authorize a private right of action, the court reasoned, Bible was foreclosed from "recharacteriz[ing]" her claim as a breach-of-contract claim. *Id.* The court concluded that Bible's claims "are preempted by the [Higher Education Act] and she has therefore failed to state a cause of action. *Id.* at 11.

But whether or not the Higher Education Act provides a private right of action for enforcement of its provisions is irrelevant to whether provisions of the Act can be made part of a binding contract between private parties. Indeed, Bible's promissory note explicitly states that the "terms of the [master promissory note] will be interpreted in accordance with applicable federal statutes and regulations, and the guarantor's policies." App. 122. Further, Bible's note contains, as have all Federal Family Education Loan Program promissory notes since 1994, the proviso that "[a]pplicable state law, except as

preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this [master promissory note]."[14] *Id.*

Except where the Act expressly preempts state law, the statute and implementing regulations preempt otherwise applicable state law only to the extent that the state law would "conflict with or hinder the satisfaction of the requirements" imposed on guaranty agencies and lenders to exercise due diligence in servicing and collecting federally-insured loans. *See* 34 C.F.R. §§ 682.410(b)(8), 682.411(o)); *see also* 55 Fed. Reg. 40120, 40121 (Oct. 1, 1990) (explaining limitations of Higher Education Act's preemption of state law).[15] Bible's state-law breach-of-contract claims pose no conflict with the Higher Education Act's statutory or regulatory requirements on guaranty agencies.

Indeed, this Court has rejected arguments similar to those urged here by USA Funds with respect to state-law claims raised by a lender participating in an analogous federal loan program, the Home Affordable Mortgage Program, which, like the Federal Family Education Loan Program, regulates lender

---

[14]As directed by the Higher Education Act, the Department has promulgated a form master promissory note for use in loans made under Federal Family Education Loan Program. 20 U.S.C. § 1082(m)(1)(D).

[15]The government also recently filed a statement of interest in the Southern District of New York taking the position that the Higher Education Act and its regulations do not displace private state-law causes of action involving allegations of fraud and misrepresentation against student loan program participants, such as lenders, guarantors or postsecondary education institutions. *See* Statement of Interest of the United States, *Sanchez v. Asa College*, No. 1:14-cv-05006-JMF (S.D.N.Y.) (filed Jan. 23, 2015).

conduct. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). In *Wigod*, the plaintiff alleged that the mortgage servicer had violated the federal mortgage program's requirements, which were incorporated into the loan-modification agreement. In defense, the mortgage servicer argued that plaintiff was improperly attempting "an 'end-run' on the lack of a private right of action under [the Home Affordable Mortgage Program] itself." *Id.* at 576. This Court disagreed, finding that plaintiff's breach-of-contract claim did not conflict with, but rather was wholly consistent with, federal law (*id.* at 580):

> [W]e do not foresee any possibility that permitting suits such as [plaintiff's] will expose mortgage servicers to multiple and varied standards of conduct. So long as state laws do not impose substantive duties that go beyond [the Home Affordable Mortgage Program's] requirements, loan servicers need only comply with the federal program to avoid incurring state-law liability.

Similarly here, Bible's breach-of-contract claim can succeed only if she is correct that USA Funds violated the Higher Education Act. Accordingly, there is no basis for concluding that her claim conflicts with federal law. And as this Court further explained in *Wigod,* "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Id.* at 581.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BENJAMIN C. MIZER
  *Principal Deputy Assistant*
  *Attorney General*

MICHAEL S. RAAB
  (202) 514-4053
  */s/ Jeffrica Jenkins Lee*
JEFFRICA JENKINS LEE
  (202) 514-5091
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530-0001*

**MAY 2015**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume requirements of Fed. R. App. P. 32(a)(7)(B) because it contains 6,980 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that the brief complies with the typeface requirements of  Fed. R. App. P. 32(a)(6) and Seventh Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 12-point Bookman Old Style font.

_/s/  Jeffrica Jenkins Lee_
JEFFRICA JENKINS LEE
Attorney for _Amicus Curiae_
 United States Department of Education

**ADDENDUM**

# Table of Contents

Letter from Ronald E. Streets, Program Specialist, Policy Dev. Div., Student Financial Assistance Programs, U.S. Dep't of Educ., to Phillip Cervin, Ass't Vice President, Collections, Texas Guaranteed Student Loan Corp. (July 28, 1997).................................................................... 1a

Dear Guaranty Agency Director Letter (March 29, 1994) ................................ 2a

*Collection Costs*



## UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF POSTSECONDARY EDUCATION

JUL 28 1997

Mr. Phillip Cervin
Assistant Vice President
Collections
Texas Guaranteed Student Loan Corporation
P.O. Box 201725
Austin, Texas  78720-1725

Dear Mr. Cervin:

Thank you for your June 24, 1997 letter in which you request
clarification regarding the Department of Education's (ED's)
interpretation of §682.410(b)(2) of the regulations on the
assessment of collection costs on defaulted Federal Family
Education Loan (FFEL) program loans as it relates to
§682.410(b)(5)(ii) of the regulations.  Specifically, the Texas
Guaranteed Student Loan Corporation (TGSLC) proposes to not
assess collection costs to defaulted FFEL borrowers who enter
into a satisfactory repayment agreement with TGSLC during the 60-
day period following claim payment of a defaulted FFEL loan.

The Department agrees with your interpretation of 34 CFR
682.410(b)(5)(ii)(D) and its interaction with §682.410(b)(2)(i).
This provision of the regulations provides the borrower an
opportunity to enter into a satisfactory repayment agreement
before the agency either reports the default to a credit bureau
or assesses collection costs against a borrower as required in
§682.410(b)(2).  You also are correct that "terms satisfactory to
the agency..." does not require that the loan be paid in full and
provides the agency with discretion in establishing a
satisfactory repayment agreement with the borrower.  If the
agency obtains a signed repayment agreement from the borrower
within the 60-day period, and the borrower begins to make
payments, the agency is not required to assess the borrower
collection costs.  Collection costs related to the default would
be assessed only if the borrower failed to continue to make
payments required by the repayment agreement.

I trust this response satisfactorily addresses your concerns.
Please contact me if I can be of further assistance.

Sincerely,

Ronald E. Streets
Program Specialist
Policy Development Division
Student Financial Assistance Programs

**1a**

*Our mission is to ensure equal access to education and to promote educational excellence throughout the Nation.*

Collection Costs



# UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF POSTSECONDARY EDUCATION

March 29, 1994

Dear Guaranty Agency Director:

This letter provides policy guidance on an important default reduction measure implemented as a result of the 1992 Amendments to the HEA.

## GUARANTY AGENCIES' INCLUSION OF COLLECTION COSTS IN REHABILITATED LOANS AND ELIGIBLE DEFAULTED LOANS PAID OFF THROUGH LOAN CONSOLIDATION UNDER 428C

Section 484A(b) of the Higher Education Act (HEA) requires a guaranty agency to assess a borrower who has defaulted on a Title IV student loan reasonable collection costs. For purposes of the Federal Family Education Loan (FFEL) Program, 34 CFR §682.410 (b)(2), published on December 18, 1992, provided parameters for what constituted "reasonable" collection costs that would be charged to the borrower on loans for which the agency had paid a default claim. The discussion of this regulation in the preamble of the final rule stated that the collection cost amount to be charged would be a percentage of the principal and interest outstanding on the loan, that it could be calculated annually, and that it would be a flat rate assessed against all borrowers with defaulted loans held by the agency. 57 Fed Reg 60290, 60311, 60312 (Dec. 18, 1992) Implementation of the requirements of section 682.410(b)(2) of the regulations has resulted in the assessment of significant amounts of collection costs, sometimes as high as 43 percent of the outstanding principal and interest on the defaulted loan.

The Higher Education Amendments of 1992 amended the HEA to add expanded opportunities to allow defaulted borrowers to satisfactorily resolve their default status. Specifically, section 428F(a)(1)(A) of the HEA requires all guaranty agencies to enter into an agreement with the Secretary to "rehabilitate" a borrower's defaulted loan through the sale of the loan, if practicable, to an eligible lender following the borrower's payment of 12 consecutive reasonable and affordable monthly payments to the agency. Section 428C(a)(4) of the HEA also now provides that a defaulted loan would be eligible for consolidation after the borrower pays a series of consecutive reasonable and affordable monthly payments to the agency on the defaulted loan. These sections of the statute did not, however, provide specific guidance on the treatment of collection costs previously assessed the borrower on the defaulted loan.

**2a**

Page Two:
March 29, 1994

Shortly after the guaranty agencies began implementation of these
provisions of the HEA, the Department of Education (the
Department) received several inquiries as to whether, absent
specific guidance in the law, outstanding collection costs
assessed a borrower on a defaulted loan could be included in the
amount of the loan for which the agency arranged the loan
rehabilitation purchase or certified as the pay-off amount for
consolidation after the borrower has successfully paid the
required series of consecutive monthly payments. The Department,
in order to effect what it believes was Congressional intent to
provide defaulted borrowers with a "fresh start," provided policy
guidance that authorized guaranty agencies to include all
outstanding collection costs on the defaulted loan in the
rehabilitated loan amount to be purchased and the Consolidation
loan pay-off amount.  In many cases, the collection costs have
increased significantly the amount of the new rehabilitated or
consolidated loan.

After the Department issued this policy guidance, several program
participants requested that the Department reconsider its
guidance.  The program participants expressed concern that
including a large amount of collection costs in the borrower's
new loan debt would be a disincentive to a borrower attempting to
resolve the default status on a loan through rehabilitation and
consolidation and would increase the likelihood that the borrower
would default on the new increased loan debt.

After further consideration, the Department has decided that,
strict application of the requirements of §484A(b) of the HEA
would frustrate the intent of the changes to the rehabilitation
and consolidation programs.  In addition, we have concluded that
the amount of the collection costs currently assessed borrowers
as reasonable under 34 CFR 682.410(b)(2) is not reasonable when
the borrower has shown the initiative to address the default
through one of these two programs.  Therefore, the Department has
decided to modify its earlier policy guidance to restrict the
amount of collection costs that will be considered "reasonable"
under these circumstances to be an amount that does not exceed
18.5 percent of the outstanding amount of principal and accrued
interest on the loan at the time the agency arranges the lender
purchase to rehabilitate the loan or certifies the pay-off amount
to the consolidating lender.  This percentage is consistent with
the percentage a guaranty agency is allowed to retain under the
loan rehabilitation program at the time of lender purchase.

Page Three
March 29, 1994

I trust this information clarifies the Department's position in this area.  Please contact us if you have further questions.

Sincerely yours,

*Robert W. Evans*

Robert W. Evans
Director, Division of Policy Development
and Member, Direct Student Loan Task Force

**4a**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2015, I electronically filed the foregoing "Brief for the United States as *Amicus Curiae* in Support of the Appellant and Reversal" with the clerk of the United States Court of Appeals for the Seventh Circuit by using the Court's CM/ECF system, and that service will be accomplished upon active CM/ECF participants using the CM/ECF system.


*/s/  Jeffrica Jenkins Lee*
JEFFRICA JENKINS LEE
Attorney for *Amicus Curiae*
 United States Department of Education